UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| NORTH AMERICAN DEER FARMERS ASSOCIATION, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 3: 08-04-DCR |
| V. | ) ) ) | |
| JONATHAN W. GASSETT, in His Official Capacity as Commissioner of the Kentucky Department of Fish and Wildlife Resources, et al., | ) ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants Jonathan W. Gassett, Commissioner of the Kentucky Department of Fish and Wildlife Resources ("DFW"), and Karen J. Alexy, Division of Wildlife Director for DFW, have moved the Court to dismiss the Complaint filed by the Plaintiff based, inter alia, on the assertion that the claims are non-justiciable and, therefore, the Court lacks subject matter jurisdiction to entertain this action. For the reasons discussed below, the Court will grant the Defendants' motion and will dismiss the Plaintiff's claim for lack of ripeness.

## I.    Background

On July 12, 2006, the Kentucky General Assembly enacted K.R.S. § 150.740 which banned the importation of cervids such as deer, moose, caribou, and elk into the Commonwealth of Kentucky. This statute was enacted to prevent the spread of Chronic Wasting Disease

("CWD")[1] to Kentucky's native cervid population.[2]  Kentucky Revised Statutes, § 150.740(1), provides in relevant part that, "[t]here shall be a ban on the importation of the members of the family Cervidae into the Commonwealth.  A person shall be guilty of a Class D felony upon conviction for violating this section."  Subsections (2) and (3) of K.R.S. §§ 150.740 authorize the DFW to immediately seize and destroy any cervids that have been imported, or that are in the process of being imported, into the Commonwealth.  No compensation is given to the owner of the destroyed cervids.

Plaintiff North American Deer Farmers Association ("NADeFA") is a non-profit association which represents the interests of persons raising deer and other cervids for commercial purposes.  Two Feathers Elk and Bison Ranch ("Two Feathers"), an NADeFA member, is a commercial elk, bison, and cattle farm located in McMinville, Tennessee.  Two Feathers routinely uses the interstate highway system to transport elk from their farm to a processing plant located in McPherson, Kansas.  The most direct interstate route between McMinville, Tennessee, and McPherson, Kansas, includes a section of I-24 passing through western  Kentucky.

---

[1]     CWD "is a contagious neurological disease affecting deer, elk and moose.  It causes a characteristic spongy degeneration of the brain of infected animals resulting in emaciation, abnormal behavior, loss of bodily functions, and death."  CWD belongs to the family of diseases known as transmissible spongiform encephalopathies ("TSEs").  Bovine spongiform encephalopathy, more commonly referred to as "Mad Cow Disease" is also in the TSE family of diseases.  Additional information on Chronic Wasting Disease can be found at the Chronic Wasting Disease website: http://www.cwd-info.org.

[2]     The legislative Act creating K.R.S. § 150.740 requires the Department of Fish and Wildlife Resources, Department of Agriculture, and Office of the State Veterinarian to submit annual reports to the Interim Joint Committee on Agriculture and Natural Resources on the status of Chronic Wasting Disease in Kentucky.  The purpose of these reports is to determine whether there is a continuing need for a statutory ban on the importation of cervids into Kentucky.  2006 Ky. Acts 159, § 4.

On September 20, 2007, Timothy Cory Looper was arrested by DFW Officers in McCracken County, Kentucky, and was charged with felony violation of KRS § 150.740. Looper, a Tennessee citizen, was transporting a load of live animals, including five captive elk and one axis deer, from a Missouri farm to a shooting preserve in Tennessee.  Looper was subsequently indicted on six felony counts for violating K.R.S. § 150.740.  Each count carries up to a five-year prison sentence and a $10,000 fine.  K.R.S. §§ 150.74(1) and 532.020(1). NADeFA and Two Feathers were both aware of Looper's arrest and subsequent indictment on December 7, 2007.

On December 28, 2007, Two Feathers attorney, Amy Cubbage, sent a letter to Dr. Jonathan Gassett, Director of the DFW, requesting guidance on whether Two Feathers' planned transport of elk from Tennessee to Kansas through Kentucky on interstate highways would be permissible under KRS § 150.740.  On January 3, 2008, Two Feathers was informed by letter from DFW's general counsel that, "K.R.S. § 150.740 prohibits the importation of elk into the Commonwealth."  The letter further stated that ". . . for a party to transport elk they must first 'import' them by bring them from a foreign state into the Commonwealth of Kentucky. Therefore, transporting elk is prohibited by design."  The letter concluded with the following warning:

> Should your clients import cervids into the Commonwealth of Kentucky regardless of intent to remain in the state, the cervids will be confiscated, destroyed, and tested for CWD.  The parties responsible would be guilty of a Class D felony pursuant to K.R.S. 150.740.  The law will continue to be enforced uniformly.

*See* Complaint, Exhibit B. [Record No. 1]  Based on this letter and the indictment of Looper,

Two Feathers, as well as all other NADeFA members, decided that it was not prudent to

transport cervids on sections of highway passing through Kentucky.  Therefore, those wishing

to transport cervids along interstate highways may have to lengthen their transports in order to

avoid crossing Kentucky's border.

### II.      Procedural History

On January, 18, 2008, NADeFA and Two Feathers filed a Complaint petitioning for

declaratory and injunctive relief against Jonathan W. Gassett and Karen J. Alexy.  Pursuant to

FED. R. CIV. P. 41(a)(1)(i), Two Feathers voluntarily dismissed its claim without prejudice on

February 13, 2008.  NADeFA did not dismiss its claim and still seeks: (1) a judgment declaring

that DFW's interpretation of K.R.S. § 150.740 to ban the transport of cervids through Kentucky

for ultimate destinations outside of Kentucky abridges rights secured to NADeFA's members

by the Commerce Clause of the United States Constitution, Article I, § 8, Clause 3; and (2) a

permanent injunction barring DFW personnel from enforcing an interpretation of  KRS §

150.740 forbidding the transport of cervids through Kentucky for ultimate destinations outside

of Kentucky.  On March 6, 2008, Defendants Gassett and Alexy responded to NADeFA's

Complaint by filing a motion to dismiss on the grounds that the Plaintiff's claims are not ripe

and, therefore, this Court lacks subject matter jurisdiction.

### III.     Standard of Review

Federal courts lack subject matter jurisdiction over claims that are not yet ripe for judicial

review.  *Norton v. Ascroft*, 298 F.3d 547, 554 (6th Cir. 2002).  Therefore, a defendant can move

to dismiss a plaintiff's claim for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) if the claim lacks ripeness. *Bigelow v. Mich. Dep't of Natural Resources*, 970 F.2d 154, 157 (6th Cir. 1992). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). Here, the Defendants' Motion to Dismiss does not attack the Plaintiff's factual assertions, but rather is a facial attack on the Plaintiff's claim. Accordingly, all of the Plaintiff's assertions are considered true for the determination of the claim's ripeness.

## IV.    Ripeness

The United States Constitution extends federal courts' jurisdiction only to justiciable case and controversies. U.S. Const. Art. III, § 2. One of the requirements necessary for a case to be justiciable is that the claim must be ripe. *See Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008). The purpose of the ripeness requirement is to avoid premature litigation and to prevent federal courts from "entangling themselves in abstract" debates that may turn out differently in different situations. *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).

The issue of whether a claim is ripe is a question of timing. *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 139 (1974). When a claim is filed too early, the claim is considered not ripe and therefore not justiciable. *Warshak*, 532 F.3d at 525 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998)). Two questions must be addressed to

determine whether a claim is sufficiently ripe to be heard in federal court: "(1) is the claim 'fit[]

. . . for judicial decision' in the sense that it arises in a concrete factual context and concerns a

dispute that is likely to come to pass? and (2) what is 'the hardship to the parties of withholding

court consideration?'" *Warshak*, 532 F.3d at 525 (quoting *Abbott Labs. v. Gardner*, 387 U.S.

136, 149 (1967)).

To determine whether a claim is sufficiently ripe, a court must determine whether the

claim is fit for judicial review. *Nat'l Rifle Assoc. v. Magaw*, 132 F.3d 272, 290 (6th Cir. 1997).

The purpose of the "fitness for judicial review" requirement is to ensure that a record exists

which will be able to adequately support an informed decision when the case is heard. *Id.* (citing

*Abbot Labs*, 387 U.S. at 149).  Generally, purely legal issues requiring no additional fact-finding

are fit for pre-enforcement judicial review.  *Id.*  However, the Supreme Court has held that

vagueness challenges to statutes must be examined  in light of the facts of the case at hand.

*United States v. Mazurie*, 419 U.S. 544, 550 (1975).  Therefore, "the statute must be judged on

an as-applied basis, and a facial challenge before the statute has been applied is premature."

*Nat'l Rifle Assoc.*, 132 F.3d at 292 (citing *Mazurie*, 419 U.S. at 550).

In the present case, the Plaintiff mounts a facial challenge to K.R.S. § 150.740, based on

the DFW's  interpretation of the term "importation" to include transportation of cervids through

Kentucky.   The  only  court  to  address  this  issue  has  held  that  K.R.S.  §  150.740  is

unconstitutionally vague and, therefore, void. [*See* Record No. 21; Exhibit #1 - Order of

McCracken Circuit Court.][3] No appellate court in Kentucky has issued an opinion on this matter as of this date.

In light of the fact that a state court has held K.R.S. § 150.740 to be unconstitutionally vague, it is uncertain whether this statute would be enforced if any of the Plaintiff's members transported cervids along Kentucky's roadways.  At this moment, there is no concrete factual context for this Court to address  K.R.S. § 150.740 on an as-applied basis.  Therefore, the facial challenge to the statue is premature at this time.  Since the Plaintiff's claim is not ripe for judicial review, there is no need for this Court to address the second question regarding the hardship to the parties by this Court withholding consideration at this time.

## V.     Conclusion

The Plaintiff's claims are not ripe[4] for review.  Accordingly, it is hereby

**ORDERED** that the Defendant's Motion to Dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure [Record No. 11] is **GRANTED**.  This matter is **DISMISSED** and **STRICKEN** from the Court's docket.

This 2nd day of September, 2008.



Signed By:
_Danny C. Reeves_  DCR
United States District Judge

---

[3]     All 6 felony counts of violating K.R.S. § 150.740 were dismissed against Timothy Cory Looper.

[4]     Both ripeness and standing are doctrines of justiciability.  Since there is no obligation to favor one justiciability doctrine over the other, this Court may address issues of ripeness and standing in any sequence it chooses.  *See Warshak*, 532 F.3d at 525 (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 66–67 (1997)).